IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| HAROLD CLEO PAXTON, III, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 24-05087-CV-SW-BP |
| FRANK BISIGNANO, Commissioner of Social Security,[1] | ) |
| Defendant. | ) |

**ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's appeal of the Commissioner of Social Security's decision denying his applications for disability and Supplemental Security Income benefits. For the following reasons, the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**

Plaintiff was born in June 1971, has at least a high school education, and has prior work experience in a variety of jobs, including cashier, security guard, cook, and fast-food worker. He filed his applications for benefits in August 2022, alleging an onset date of July 30, 2021.

The ALJ determined Plaintiff suffers from a variety of physical and emotional/psychological conditions, not all of which need to be discussed to resolve this appeal. As relevant here, the ALJ found Plaintiff suffers from persistent depressive disorder with anxious distress. (R. at 16.) He then found Plaintiff retains the residual functional capacity ("RFC") to perform light work with various limitations; with respect to psychological/mental limitations, the ALJ found Plaintiff is limited to "understanding, remembering, and carrying out simple

---

[1] Frank Bisignano became the Commissioner of Social Security on May 15, 2025, and therefore, pursuant to Rule 25(d), he should be substituted as the Defendant in this matter.

instructions, and maintaining concentration, persistent and pace sufficient to perform work that consists of simple, routine tasks, requiring only simple workplace judgments." (R. at 21.) The ALJ then found Plaintiff could not perform his past work, but based on testimony from a Vocational Expert ("VE") he found Plaintiff could perform work as a small products assembler, electronics worker, or a fundraiser. (R. at 32.)

Plaintiff argues the ALJ's decision should be reversed because he did not adequately explain why he did not adopt the opinions set forth in a Medical Source Statement ("MSS") prepared by Dr. Paul Geiger. The Commissioner opposes reversal, and the parties' arguments will be discussed below.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. . . . As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted).

Dr. Geiger's MSS indicates Plaintiff is mildly limited in his ability to understand and remember work-like procedures and very short and simple instructions, and (curiously) is not limited in his ability to understand and remember detailed instructions. (R. at 807-08.) These

2

Case 3:24-cv-05087-BP    Document 11    Filed 06/03/25    Page 2 of 6

areas of functionality appear under a broad heading of "Understanding and Memory." Another broad area of functionality is "Sustained Concentration and Persistence," and under that heading Dr. Geiger indicated Plaintiff is moderately limited in his ability to:

- carry out very short and simple instructions,
- carry out detailed instructions,
- maintain attention and concentration for extended periods,
- perform activities within a schedule and maintain attendance,
- sustain a routine without supervision,
- work in coordination with or proximity to others without being distracted,
- make simple work-related decisions, and
- complete a normal workday and workweek without interruption from his symptoms.

(R. at 808.) The MSS defined a moderate limitation as one that is 30% below the norm; it did not specifically define a "mild limitation." Nonetheless, Dr. Geiger concluded Plaintiff would "likely be 'off task' from [his] symptoms that would interfere with attention . . . needed to perform even simply tasks" only 10% of the time. (R. at 807.)

In his evaluation of the evidence relevant to the RFC findings, the ALJ addressed Dr. Geiger's MSS twice. He first did so while discussing other medical evidence in the Record, most of which was not consistent with Dr. Geiger's opinion. (R. at 28.) The ALJ pointed out the differences and stated that he "[n]evertheless" found some limitations were appropriate. (R. at 28.) The ALJ then discussed Plaintiff's testimony and written statements "about the intensity, persistence, and limiting effects of his symptoms" and found they were "inconsistent with his activities of daily living," following which he explained this finding. (R. at 28-29.)
3

The discussion then shifted to Plaintiff's physical ailments before returning to the subject of Plaintiff's psychological impairments. The ALJ noted Dr. Geiger's MSS opined that Plaintiff (1) "would be of[f] task 10% of the workday," (2) was "mildly limited" in his ability to, among other things, "remember locations[,] work-like procedures[, and] very short and simple instructions," and (3) was "moderately limited in his ability to sustain concentration and persistence." (R. at 30.) The ALJ then stated that "[w]hile the opinion may be somewhat supported by the interactions between the claimant and Dr. Geiger[,] the undersigned notes that it is inconsistent with the care Dr. Geiger provided for the claimant [which] focus[ed] on" Plaintiff's physical conditions. (R. at 30.) The ALJ identified aspects he found particularly "unpersuasive," and then stated "[t]he portion of the opinion that finds the claimant would have a moderate limitation in activities requiring sustained concentration and persistence is persuasive." (R. at 30.) The ALJ explained why he found a basis for such limitations and concluded they could be addressed in the RFC by limiting Plaintiff to "work with simple instructions, simple and routine tasks, requiring only simple workplace judgments . . . ." (R. at 30.)

Plaintiff does not dispute the ALJ's characterization of the evidence. Instead, he argues the ALJ committed legal error by failing to adequately explain how he arrived at his RFC decision. Specifically, he reasons that:

1. Several specific functions are listed in the MSS under the heading of "Sustained Concentration and Persistence,
2. Dr. Geiger's opined that Plaintiff is "moderately limited" in performing those functions,
3. The MSS defines "moderately limited" to mean 30% below the norm, and
4. The ALJ found "the portion of the" MSS opining Plaintiff had a "moderate limitation in activities requiring sustained concentration and persistence is persuasive."

4

Yet, the RFC provides Plaintiff can perform some of those functions under the MSS's heading of Sustained Concentration and Persistence without any limitation.

The Court does not discern error for several reasons. It is doubtful the ALJ adopted Dr. Geiger's definition of the word "moderate," given the term is defined much differently in the Program Operations Manual System (POMS). (*See* POMS DI 24510.063 ("Moderately Limited" simply means "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired" and does not specify a degree of impairment.) Additionally, and perhaps more importantly, in multiple instances the ALJ noted the MSS conflicted with other evidence in the Record (including information from other doctors, Dr. Geiger's treatment of Plaintiff, and Plaintiff's testimony) he found persuasive. This narrative demonstrates that the ALJ was not entirely convinced by the MSS, making it unlikely he adopted Dr. Geiger's assessment in full. Finally, following his discussion of all the evidence bearing on Plaintiff's functional abilities—that is, the MSS *and* the evidence conflicting with it— the ALJ explained he found Plaintiff could perform work with simple instructions, simple routines, and simple tasks. The ALJ's explanation is sufficiently clear, and he provided good reason for not adopting Dr. Geiger's assessment in full, so reversal is not justified. *See, e.g., McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (reversing because it was not clear whether the ALJ discounted the doctor's opinion); *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003) (evaluating claimed failure to follow SSR 96-8p only to determine if ALJ provided sufficient analysis to permit judicial review).

Plaintiff places great emphasis on the ALJ's statement that he found the MSS's assessment of Plaintiff's abilities under the heading "Sustained Concentration and Persistence" to be "persuasive." He effectively concludes this required the ALJ to give greater weight to the

information under the heading than he did, but the Court does not agree. The ALJ did not say he found the MSS compelling, and he did not say it was more persuasive than the other evidence in the Record. Given the entirety of the ALJ's discussion, he clearly found other evidence outweighed the MSS because it was *more* persuasive. At worst, his use of the unmodified term "persuasive" is a deficiency in opinion-writing, *see*, *e.g.*, *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008); *Draper v. Barnhart,* 425 F.3d 1127, 1130 (8th Cir. 2005), but it is not an error that casts doubt on how the ALJ viewed the evidence. Reversal is not required.

### III.  CONCLUSION

For the reasons stated above, the Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

**DATE**: June 3, 2025

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT